**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THOMAS LIAM MURPHY, ESQ., MARK
MIRANDA, GABRIELLE REED, ALEX
PERRY, ESQ., CHARLES SUSTAITA,
TREVOR PERRY, ESQ., JOY MORGAN,
GRAHAM "MICKEY" MURPHY, DR.
JAMES MORGAN, WALKER POST,
SARA JESSICA-DILKS, CASSIDY
HOOPER, TRAVIIS MASSENGALE, and
JEFFREY ALLTON,

                          Plaintiffs,

          -against-

PHANTOM TECHNOLOGIES, INC. and
AUX CAYES FINTECH CO. LTD., d/b/a
"OKX,"

                        Defendants.

1:25-cv-03060-MMG

# PHANTOM'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISQUALIFY THOMAS LIAM MURPHY, ESQ. AS COUNSEL

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................................. 1

RELEVANT FACTS .............................................................................................................. 2

    A.   Murphy Solicited The Token Holders To Acquire WIENER DOGE; He Was
           Subsequently Hacked ................................................................................................ 2

    B.   Murphy is Representing Not Only Himself, But Is Also Counsel For The Thirteen
           Additional Individual Plaintiffs .............................................................................. 3

    C.   Procedural Background ........................................................................................... 4

ARGUMENT ......................................................................................................................... 4

I.   Applicable Law ............................................................................................................. 4

II.  The Court Should Disqualify Murphy From Representing  The Token Holder Plaintiffs ..... 6

    *a.*   *Disqualification Is Warranted* ................................................................................. 6

    *b.*   *No Exceptions To Rule 3.7(a) Apply* ....................................................................... 8

    *c.*   *Disqualification Is Consistent With Precedent* ....................................................... 9

CONCLUSION ..................................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Blue Planet Software, Inc. v. Games Int'l., LLC*,
    331 F.Supp.2d 273 (S.D.N.Y. 2004)......................................................................4

*Decker v. Nagel Rice LLC*,
    716 F. Supp. 2d 228 (S.D.N.Y. 2010)............................................................. 4, 9-10

*Fulfree v. Manchester*,
    945 F. Supp. 768 (S.D.N.Y. 1996) ......................................................................9

*Gleason v. Zocco*,
    941 F. Supp. 32 (S.D.N.Y. 1996) ................................................................... 9-10

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
    409 F.3d 127 (2d Cir. 2005)............................................................................4

*Murray v. Metro. Life Ins. Co.*,
    583 F.3d 173 (2d Cir. 2009).........................................................................5, 8

*Noval Williams Films LLC v. Branca*,
    128 F. Supp. 3d 781 (S.D.N.Y. 2015)............................................................. 6, 8-9

*Premium Prods., Inc. v. Pro Performance Sports, LLC*,
    997 F. Supp. 2d 433 (E.D. Va. 2014) ............................................................. 8-9

*Purgess v. Sharrock*,
    33 F.3d 134 (2d Cir. 1994)............................................................................4

*Ramey v. Dist. 141, Int'l. Ass'n of Machinists & Aerospace Workers*,
    378 F.3d 269 (2d Cir. 2004)........................................................................ 5-6

*Rizzuto v. De Blasio*,
    No. 17-CV-7381(ILG)(ST), 2019 WL 1433067 (E.D.N.Y. Mar. 29, 2019) ...........................6

*United States v. Arrington*,
    867 F.2d 122 (2d Cir.1989)............................................................................6

*Wachovia Bank, Nat. Ass'n v. Focus Kyle Grp., LLC*,
    896 F. Supp. 2d 330 (S.D.N.Y. 2012)................................................................10

**STATUTES & RULES**

22 N.Y.C.R.R. §3.7(a)-(b) ...................................................................... 4-6, 8

NY Eth. Op. 1045, NYSBA (Jan. 8, 2015)
    https://nysba.org/ethics-opinion-1045/ ....................................................................................5

## <u>PRELIMINARY STATEMENT</u>

Liam Murphy, a practicing New York attorney, is simultaneously a self-represented plaintiff, alleged victim, and the central (if not sole) fact witness in this case.  He is also the lone attorney for the 13 other plaintiffs.  This convergence of roles will inevitably taint every stage of this litigation – and especially a jury trial.  This is the rare case where disqualification of counsel is not only warranted, but also absolutely necessary.

Murphy is the creator and promoter of WIENER DOGE, the cryptocurrency token at the heart of this lawsuit.  In late 2024, Murphy created, launched, and solicited investment in WIENER DOGE.  As such, Murphy alone holds the knowledge of how WIENER DOGE was generated, designed, marketed, sold, and maintained – and how it has and will grow value.

He is also allegedly the alleged primary victim.  According to Murphy, following his creation of WIENER DOGE, an unknown third-party hacked his non-custodial cryptocurrency wallet, precipitating a collapse in the value of WIENER DOGE.  Murphy claims this hack and its aftermath caused millions of dollars in damages to himself and the other Plaintiffs.  At the same time, Murphy disclaims any responsibility for his conduct or WIENER DOGE's collapse in value. In short, Murphy casts himself as the singular protagonist in his lawsuit's story – a developer, victim, litigant, and trial lawyer, all in one.

Murphy is representing himself as the de facto lead plaintiff.  He is also sole counsel for the other 13 Plaintiffs – Murphy's "friends and family" – who purchased or were gifted Murphy's WIENER DOGE (the "Token Holder Plaintiffs").  Murphy will therefore be taking discovery, presenting arguments to the Court, and addressing the jury on their behalf, almost exclusively about facts for which Murphy is the primary, and often sole, witness.  Murphy will be litigating his own version of events, and litigating his own credibility.

It is well-settled law that an attorney cannot serve as both advocate and witness. The witness-advocate rule exists precisely to prevent such a breakdown in the adversarial process. That rule prohibits a lawyer from acting as counsel before a tribunal in a matter where the lawyer is likely to be a witness on a significant issue of fact, subject to certain exceptions not relevant here.

Murphy's overlapping roles pose an obvious and direct conflict of interest, and present all of the problems that the witness-advocate rule is meant to avoid. His continued participation as counsel for the Token Holder Plaintiffs will render a fair jury trial impossible, and otherwise taint the remainder of the proceedings – from motion practice, and then even if necessary, through discovery, dispositive motions, and trial.

To avoid these irreconcilable conflicts and protect the fairness of this litigation, Phantom respectfully requests the Court disqualify Murphy from representing the Token Holder Plaintiffs.

## **RELEVANT FACTS**

### A.    **Murphy Solicited The Token Holders To Acquire WIENER DOGE; He Was Subsequently Hacked**

According to the Complaint, Murphy – and Murphy alone – is at the center of each and every material event in this case.

Plaintiffs allege that Murphy singlehandedly created WIENER DOGE and generated demand for the token. Specifically, that Murphy "developed" WIENER DOGE (Compl. ¶¶84, 87), "designed" the project (*id*. ¶88), "bought WIENER DOGE tokens from the Raydium liquidity pool" (*id*. ¶90), "swapped over $66,000 worth of SOL for Wiener Doge" (*id.* ¶91), "bought Wiener Doge tokens and gave as gifts to his friends, family, and community, including many of the Plaintiffs" (*id*.), and "stored" over $1.5 million in Wiener Doge tokens "within his Phantom wallet" (*id*. ¶95). Murphy further asserts that WIENER DOGE's entire value stems solely from his own efforts. Compl. ¶¶84, 87–92, 96. In other words, but for Murphy's actions, the assets at issue in

2

this litigation would not exist, much less have any value.

Murphy is also the only alleged direct victim. Plaintiffs claim that Murphy controlled three Phantom wallets where he held his WIENER DOGE tokens. Compl. ¶¶14, 96, 106. Murphy alone was responsible for securing those assets and retained custody up until the moment they were allegedly stolen from him by a cybercriminal. *Id*.

In fact, Plaintiffs allege that Murphy took steps "to improve security and to mitigate harm caused by having one of his Phantom wallets compromised." *Id*. ¶96. These facts (along with many more like them) underscore Murphy's centrality. He possesses singular and unique firsthand knowledge of virtually every disputed issue. If this case proceeds to discovery and trial, he will be the only witness competent to testify about critical questions bearing on liability and damages.

### B. Murphy is Representing Not Only Himself, But Is Also Counsel For The Thirteen Additional Individual Plaintiffs

Murphy filed the Complaint on behalf of himself and 13 others, whom he describes as his "family and friends." Compl. at 1. Plaintiffs allege seven causes of action sounding in common law and statute. Compl. ¶¶135–411. Plaintiffs also demanded a jury trial. Compl. ¶412. Murphy is the only attorney who has appeared on behalf of Plaintiffs. On a June 4, 2025 call between Murphy and the undersigned counsel, Murphy represented that he was considering retaining co-counsel (but not substitute counsel) to assist in representing the Token Holder Plaintiffs.

All of Plaintiffs' claims are predicated on allegations that Phantom harmed Murphy, and that this harm flowed downstream to the Token Holder Plaintiffs. Adjudicating these claims will necessarily require a jury to evaluate the credibility of Murphy's allegations, determine whether and to what extent he and the Token Holder Plaintiffs suffered damages, and assess whether Murphy himself bears any liability to them.

### C.    Procedural Background

Murphy filed the Complaint on April 14, 2025.  ECF 1.  On April 30, 2025, the Court extended the time for Phantom to respond to the Complaint, and set a briefing schedule for Phantom's anticipated Motion to Compel Arbitration and To Dismiss.  ECF 12.  Under that schedule, Plaintiffs' Opposition is due on July 25, 2025, and Phantom's Reply is due on August 8, 2025.  The Court has also scheduled an initial pretrial conference for June 25, 2025.

## ARGUMENT

### I.    Applicable Law

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process. In exercising this power, [courts have] attempted to balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted) (cleaned up).  A motion to disqualify is "committed to the sound discretion of the district court." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994).

"When deciding a motion to disqualify an attorney, federal district courts in New York consider various sources of law, including the ABA Model Rules of Professional Conduct, the ABA Model Code of Professional Responsibility, and the New York Code of Professional Responsibility." *Blue Planet Software, Inc. v. Games Int'l., LLC*, 331 F.Supp.2d 273, 275 (S.D.N.Y. 2004).  "Although any doubts are to be resolved in favor of disqualification, the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary." *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231–32 (S.D.N.Y. 2010).

The ABA Model Code of Professional Responsibility and New York Rules of Professional Conduct both include the "witness-advocate rule."  Under Rule 3.7(a) of the New York Rules, which substantially mirrors the analogous ABA Model Code rule, "[a] lawyer shall not act as

advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant

issue of fact unless:

> (1) the testimony relates solely to an uncontested issue;
>
> (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
>
> (3) disqualification of the lawyer would work substantial hardship on the client;
>
> (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
>
> (5) the testimony is authorized by the tribunal."

NY ST RPC Rule 3.7(a) (McKinney).[1] *See also* NY Eth. Op. 1045 (January 8, 2015) ("If

the lawyer is likely to be a witness on a significant issue of fact, Rule 3.7(a) does not authorize the

lawyer to choose whether to be a lawyer or a witness. The lawyer must not act as an advocate

before the tribunal.")*:* Ethics Opinion, NYSBA (Jan. 8, 2015), https://nysba.org/ethics-opinion-

1045/. The Second Circuit has "identified four risks that Rule 3.7(a) is designed to alleviate:

> (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused . . . These concerns matter because, if they materialize, they could undermine the integrity of the judicial process."

*Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (citation omitted).

Accordingly, "[t]he advocate-witness rule applies, first and foremost, where the attorney

representing the client before a jury seeks to serve as a fact witness in that very proceeding."

*Ramey v. Dist. 141, Int'l. Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282 (2d Cir.

---

[1] Rule 3.7(b), which addresses imputation across lawyers at the same firm, is even broader, but since Murphy is operating as a solo practitioner to date, this Rule is not implicated.

2004); *see also United States v. Arrington*, 867 F.2d 122, 126 (2d Cir.1989) (Most important, when one individual assumes the role of both advocate and witness it "[may] so blur[ ] the line between argument and evidence that the jury's ability to find facts is undermined."). "[T]hough the test for necessity is strict, it is met when the attorney is a or the central participant in the events that form the basis of the complaint." *Rizzuto v. De Blasio*, No. 17-CV-7381(ILG)(ST), 2019 WL 1433067, at *6 (E.D.N.Y. Mar. 29, 2019).

## II.  The Court Should Disqualify Murphy From Representing The Token Holder Plaintiffs

This case meets – and exceeds – the high standard for disqualification.  It is a textbook application of the witness-advocate rule, as all four concerns animating that rule are not merely possible but inevitable should Murphy represent the Token Holder Plaintiffs.

### a.  Disqualification Is Warranted

It is uncontestable that Murphy is the "key witness on factual issues of great significance to the litigation." *Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 791 (S.D.N.Y. 2015) (citing Rule 3.7(a)).  Among potential and necessary witnesses, Murphy stands alone.  He is not merely a bystander to third-party events.  Rather, he is the architect of the facts at issue, and his own conduct lies at the heart of both Plaintiffs' claims and Phantom's anticipated defenses.

Murphy created, led, and was the largest investor in WIENER DOGE.  The claimed value of WIENER DOGE, and thus Plaintiffs' alleged damages, is said to derive entirely from Murphy efforts.  He is also the Plaintiff alleging the largest loss, which inevitably shapes his personal stake in litigation and settlement strategy.  The Complaint, which Murphy authored, details how he was allegedly hacked and how he purportedly attempted to mitigate losses to himself and the other Plaintiffs.  Compl. ¶96.

The central contested facts will include, at a minimum:

- Murphy's role in developing WIENER DOGE, and his trading in the tokens;

- His understanding of Phantom's software;

- His representations to the Token Holder Plaintiffs regarding risks;

- His role in safeguarding his WIENER DOGE;

- The circumstances and aftermath of the alleged hack of his Phantom wallet;

- His communications to the public and the Token Holder Plaintiffs about the hack and this lawsuit;

- His interactions with Phantom; and

- Any representations made to him by Phantom or another defendant, and his reliance on them.

These facts are pivotal to the jury's deliberations. Only Murphy can offer material testimony on these matters – testimony both Plaintiffs (including Murphy) and Phantom will necessarily elicit.

Second, Murphy's credibility will be a central trial issue. The factfinder must assess his testimony on direct and cross-examination on these topics core to Plaintiffs' claims and Phantom's defenses, risking juror confusion. Phantom will be placed in the untenable position of deposing and cross-examining Murphy to elicit evidence and test his credibility.

Even in pre-trial proceedings, Murphy's interests diverge from those of his co-Plaintiffs, since discovery will probe his actions, his credibility, and his own fault. If this action proceeds beyond the pleadings, Phantom expects to assert affirmative defenses based squarely on Murphy's culpability.

Indeed, to the extent Murphy's co-plaintiffs have suffered any damage, one of the major questions in this litigation will be the extent to which Murphy himself caused that damage by

failing to take certain steps that would have been reasonably prudent to take. The Token Holder Plaintiffs may have causes of action against Murphy. Murphy cannot possibly represent their interests as a lawyer, at the same time he is interested in defending himself against potential claims his clients may want to bring against him.

Yet Murphy proposes to do exactly that: to simultaneously act as counsel for the Token Holder Plaintiffs, vouching for his own credibility, making arguments rooted in his own testimony, and advocating positions in which he has a direct and substantial interest. This conflict guarantees actual and apparent impropriety and confusion. It also invites a testifying attorney to engage in conduct aimed at "distorting the truth as a result of bias in favor of his client." *Murray*, 583 F.3d at 178. The integrity of the judicial process cannot tolerate Murphy serving as Plaintiff, fact witness, alleged victim, and counsel for the Token Holder Plaintiffs in the same case.[2]

b.    *No Exceptions To Rule 3.7(a) Apply*

None of Rule 3.7(a)'s limited exceptions apply. Murphy's testimony concerns heavily contested issues. Rule 3.7(a)(1). It will not relate "solely to the nature and value of legal services rendered in the matter," or a "matter of formality." Rule 3.7(a)(2) or (a)(4).

Nor would disqualifying Murphy as counsel impose substantial hardship on the Token Holder Plaintiffs. Rule 3.7(a)(3). "Because of the strong policy considerations in support of the advocate-witness rule, courts have given the substantial hardship exception a very narrow reading." *Noval Williams Films LLC*, 128 F. Supp. 3d at 792 ("Financial difficulties are insufficient to defeat an otherwise appropriate motion to disqualify."); *see also Premium Prods., Inc. v. Pro Performance Sports, LLC*, 997 F. Supp. 2d 433, 438 (E.D. Va. 2014) ("it is well-settled

---

[2] This remains true even if Murphy was joined by independent co-counsel (but not substitute counsel) to represent the Token Holder Plaintiffs along with Murphy. After all, such additional representation would not cure the relevant problem: Murphy's conflicting roles as counsel and necessary witness on key, contested facts.

that the expense associated with disqualification is not a substantial hardship because, were expense a proper basis for exception, the exception would soon swallow the rule."). Moreover, any plausible hardship is eliminated by the fact that Murphy, like any other key witness, will still be available to help the Token Holder Plaintiffs prepare for trial. *See id*. at 435.

Finally, Phantom brings this motion at the very start of the case, before the parties have joined issue or commenced discovery, leaving the Token Holder Plaintiffs ample time to retain new counsel. *See Gleason v. Zocco*, 941 F. Supp. 32, 36 (S.D.N.Y. 1996) (disqualifying counsel shortly after commencement of action, noting that "the prejudice to plaintiff of having to change counsel at this stage of the proceeding—and the 'tactical advantage' to the defendant—are insignificant."); *Fulfree v. Manchester*, 945 F. Supp. 768, 772 (S.D.N.Y. 1996) ("There is no justification for allowing Mr. Fulfree to represent plaintiff during the pre-trial aspect of this litigation when it is clear that he may be a material witness at trial, and it is clear that he could be required to testify.").

### c.    *Disqualification Is Consistent With Precedent*

Courts routinely disqualify counsel whose involvement would violate the witness-advocate rule, especially early in litigation. For instance, disqualification has been ordered where a party's counsel's testimony "cannot be obtained from better witnesses" and "could undermine his client's claim." *Noval Williams Films LLC*, 128 F. Supp. 3d at 791. That is precisely the danger here, where Murphy is inarguably in the "best, or only, position to testify" about the critical contested facts. *Id*.

Courts have also disqualified counsel whose anticipated testimony would compromise their credibility and the proceeding's fairness. In *Decker v. Nagel Rice LLC*, for example, the Court disqualified a lawyer deeply involved in the underlying facts, and whose testimony (and inevitable cross-examination) would "blur the line between argument and evidence [such] that the jury's

9

ability to find facts [will be] undermined." 716 F. Supp. 2d 228, 234 (S.D.N.Y. 2010) (cleaned up). As in *Decker*, Murphy's conflicting roles here will preclude a fair proceeding.

This is not a case where counsel happens to possess marginal knowledge of relevant events, or "one of many persons with personal knowledge of material facts in this case." *Wachovia Bank, Nat. Ass'n v. Focus Kyle Grp., LLC*, 896 F. Supp. 2d 330, 332 (S.D.N.Y. 2012). There is no one else besides Murphy who can testify or otherwise provide evidence regarding the topics above.

Murphy's "extensive personal involvement in every aspect of the underlying controversies that led to this lawsuit require his disqualification, both because of the likelihood that he will be a necessary witness and because of the real and present danger that his personal interests will infringe on his professional representation in ways deleterious to his client." *Gleason*, 941 F. Supp. at 35.

## CONCLUSION

Phantom respectfully requests that the Court disqualify Murphy from acting as counsel to the Token Holder Plaintiffs, and grant any other such relief as the Court deems appropriate.

Dated: New York, New York
      June 16, 2025

                    MORRISON COHEN LLP

                    By: */s/ Jason Gottlieb*
                        Jason Gottlieb
                        Daniel Isaacs
                        Emma McGrath
                        909 Third Avenue
                        New York, New York 10022
                        (212) 735-8600
                        jgottlieb@morrisoncohen.com
                        disaacs@morrisoncohen.com
                        emcgrath@morrisoncohen.com

                    *Attorneys for Phantom Technologies, Inc.*

## **WORD COUNT CERTIFICATION**

Pursuant to Section II.B.2 of the Court's Individual Rules & Practices, the undersigned hereby certifies that this memorandum of law contains 2,988 words. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

 _/s/ Jason Gottlieb_
Jason Gottlieb
