**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS LIAM MURPHY, ESQ., MARK MIRANDA, GABRIELLE REED, ALEX PERRY, ESQ., CHARLES SUSTAITA, TREVOR PERRY, ESQ., JOY MORGAN, GRAHAM "MICKEY" MURPHY, DR. JAMES MORGAN, WALKER POST, SARA JESSICA-DILKS, CASSIDY HOOPER, TRAVIIS MASSENGALE, and JEFFREY ALLTON, | 1:25-cv-03060-MMG<br><br>**ORAL ARGUMENT REQUESTED** |
| Plaintiffs, | |
| -against- | |
| MICHAL IRENEUSZ RYDOCHOWSKI & PHANTOM TECHNOLOGIES, INC. | |
| Defendants. | |

**PHANTOM'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS**
**MOTION TO COMPEL ARBITRATION AND**
**OTHERWISE DISMISS THE AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

Page

ARGUMENT ....................................................................................................................... 1

I.    Murphy Agreed To Arbitrate ....................................................................................... 1

     a.      The Terms Bind Murphy ........................................................................... 1

     b.      The Delegation Clause Requires an Arbitrator To Decide Murphy's Challenges .. 2

     c.      The Challenges to Murphy's Arbitration Agreement Are Meritless ..................... 2

     d.      Arbitration Preserves Murphy's Ability To Vindicate His Rights ........................ 3

II.    The Non-Users Lack Standing ................................................................................... 5

III.    The CEA Registration Claims Are Specious ............................................................. 6

     a.      Swapper Allows Spot Transactions ........................................................... 6

     b.      Plaintiffs' "Retail Commodity Transaction" Theory Is Deficient ......................... 7

     c.      Plaintiffs Lack Standing To Sue For Registration-Based Violations .................... 8

IV.    The Negligence Claims Fail As A Matter Of Law ................................................... 9

     a.      The Economic Loss Rule Applies ............................................................. 9

     b.      Plaintiffs Fail To Plead Any Duty ............................................................. 9

         i.      Negligence Per Se Fails .................................................................... 9

         ii.      Plaintiffs Concede No Common Law Duty Exists ..................................... 10

     c.      Plaintiffs Do Not Plausibly Allege Breach .................................................. 10

     d.      Plaintiffs Do Not Sufficiently Allege Causation ........................................... 11

V.    The Fraud-Based Claims Fail ................................................................................... 11

     a.      Plaintiffs Allege No Actionable Misrepresentations ....................................... 11

     b.      No Commodities Fraud Claim Can Survive .................................................. 12

     c.      No GBL Claim Can Survive .................................................................... 12

     d.      No Lanham Act Claim Can Survive .......................................................... 13

VI.    The Aiding-And-Abetting Claim Fails ..................................................................... 13

VII.    The Terms Otherwise Bar Murphy's Claims ........................................................... 14

CONCLUSION .................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**STATE CASES**

*Rosencrans v. Dover Images, Ltd.*,
    192 Cal. App. 4th 1072 (2011) ...............................................................................11

*S. California Gas Leak Cases*,
    7 Cal. 5th 391 (2019) ...............................................................................................9

*Sellers v. JustAnswer LLC*,
    289 Cal. Rptr. 3d 1 (2021) .......................................................................................1

**FEDERAL CASES**

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) .................................................................................................3

*Anderson v. Tether Holdings Ltd.*,
    2023 U.S. Dist. LEXIS 138242 (S.D.N.Y. Aug. 4, 2023) ......................................5

*In re BAM Trading Servs. Inc. Sec. Litig.*,
    733 F. Supp. 3d 854 (N.D. Cal. 2024) ....................................................................3

*Berk v. Coinbase, Inc.*,
    2018 U.S. Dist. LEXIS 184284 (N.D. Cal. Oct. 23, 2018)......................................8

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ....................................................................................2

*Bielski v. Coinbase, Inc.*,
    87 F.4th 1003 (9th Cir. 2023) ..................................................................................2

*CFTC v. McDonnell*,
    287 F. Supp. 3d 213 (E.D.N.Y. 2018) ....................................................................6

*In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
    435 F. Supp. 3d 845 (N.D. Ill. 2020), *aff'd sub nom. Barry v. Cboe Glob.*
    *Mkts., Inc.*, 42 F.4th 619 (7th Cir. 2022) ................................................................8

*Chufen Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020)...................................................................................12

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
    843 F.3d 48 (2d Cir. 2016).....................................................................................13

*Davenport v. NVIDIA Corp.*,
    719 F. Supp. 3d 1019 (N.D. Cal. 2024) ...................................................................3

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (2d Cir. 2002)..................................................................................13

*Gonzalez v. Comm'r of Soc. Sec.*,
    2022 U.S. Dist. LEXIS 98108 (S.D.N.Y. May 27, 2022).......................................2

*Harter v. Iowa Grain Co.*,
    220 F.3d 544 (7th Cir. 2000) ...............................................................................4

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019)..........................................................................................2

*Kumaran v. Vision Fin. Markets, LLC*,
    2022 WL 17540669 (S.D.N.Y. Dec. 6, 2022) ....................................................4

*Lexmark Int'l., Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)...........................................................................................13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    962 F. Supp. 2d 606 (S.D.N.Y. 2013)..................................................................5

*Oppenheimer & Co., Inc. v. Neidhardt*,
    56 F.3d 352 (2d Cir. 1995)...................................................................................1

*Pittman v. Chick-fil-A, Inc.*,
    2022 U.S. Dist. LEXIS 133686 (S.D.N.Y. July 27, 2022) ..................................13

*Plains Mktg., L.P. v. Kuhn*,
    2011 WL 4916687 (E.D.N.Y. Oct. 17, 2011).....................................................14

*Rent-A-Center, W., Inc., v. Jackson*,
    561 U.S. 63 (2010)...............................................................................................2

*Rider v. Uphold HQ Inc.*,
    657 F. Supp. 3d 491 (S.D.N.Y. 2023)................................................................10

*S&A Farms, Inc. v. Farms.com, Inc.*,
    678 F.3d 949 (8th Cir. 2012) ...............................................................................8

*Seife v. U.S. Dep't of Health & Hum. Servs.*,
    440 F. Supp. 3d 254 (S.D.N.Y. 2020) .................................................................5

*Shearson/Am. Express v. McMahon*,
    482 U.S. 220 (1987)............................................................................................4

*Song v. Yao Bros. Group LP*,
    2013 WL 12109109 (S.D.N.Y. July 30, 2013) ........................................................8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ...................................................................9

*Terpin v. AT&T Mobility LLC*,
    118 F.4th 1102 (9th Cir. 2024) .............................................................................9

*Tikotsky v. Phantom Technologies, Inc.*,
    No. 24-60459-CIV-SINGHAL (S.D. Fla. Dec. 11, 2024) ......................................1

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...............................................................12

*United States CFTC v. Monex Credit Co.*,
    931 F.3d 966 (9th Cir. 2019) .................................................................................7

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022)...............................................................................................4

*Zanotti v. Invention Submission Corp.*,
    2020 U.S. Dist. LEXIS 97040 (S.D.N.Y. June 2, 2020)........................................5

**STATUTES & RULES**

23 N.Y.C.R.R. § 500....................................................................................................9, 10

7 U.S.C. § 1a(47) ..............................................................................................................6

7 U.S.C. § 25(a) .......................................................................................................4, 8, 12

7 U.S.C. § 25(c) .............................................................................................................4, 7

Rule 9(b) .....................................................................................................................11, 13

Rule 12(b)(6).....................................................................................................................14

**OTHER AUTHORITIES**

CFTC, *Further Definition of "Swap"*…, August 13, 2012,
    (https://www.federalregister.gov/d/2012-18003/p-1103) .......................................6

Plaintiff Liam Murphy cannot escape a valid arbitration agreement, and the other plaintiffs, none of whom used Phantom software, lack standing to assert claims against Phantom. The CEA does not provide a private right of action here, or allow Plaintiffs to pretend that ordinary spot trades are regulated derivatives. Plaintiffs' common law theories also collapse under Plaintiffs' own conflicting allegations and applicable law. The Court should enforce the arbitration agreement against Murphy, and dismiss the other plaintiffs with prejudice.

## ARGUMENT

### I. Murphy Agreed To Arbitrate

#### a. The Terms Bind Murphy

Agosti's declaration shows that Murphy assented to the Terms. *See* Mot. at 9; Agosti, ¶¶14–16. Murphy submits no evidence to the contrary.[1] The Opposition acknowledges that Murphy *did* assent. Opp. at 17. He does not dispute that clickwrap agreements like the Terms are routinely enforced under California law, *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 20–21 (2021), and that Phantom's Terms have been enforced by other courts, *Tikotsky v. Phantom Technologies, Inc.*, No. 24-60459-CIV-SINGHAL (S.D. Fla. Dec. 11, 2024).

Murphy's "opt-out" theory is meritless. Opp. at 16–17. The Opposition alleges Murphy sent two emails, well after the Terms' 30-day opt-out period expired, stating that he was "contemplating potential litigation against Phantom" and that he "planned to commence litigation soon." Opp. at 17. Even if those emails were sent within the opt-out period (they were not), they did not comply with the Terms' opt-out procedure, which requires written notice to a designated email address, with a clear statement, within 30 days of assent. Agosti, Ex. 1 at 27. Murphy cites

---

[1] "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

no authority allowing the "re-opening" of an expired opt-out period, nor does Murphy produce evidence that he assented a second time under different conditions.[2]  *See* Opp. at 16–17.

   *b.  The Delegation Clause Requires an Arbitrator To Decide Murphy's Challenges*

   Even if the arbitration agreement's enforceability were disputable, the Terms delegate "any disputes concerning the scope, validity, or enforceability of this arbitration provision" to the arbitrator.  *See* Agosti, Ex. 1.  A court may not decide an arbitrability question that the parties delegated to the arbitrator.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019).

   Murphy does not challenge the delegation provision.  His unconscionability and effective-vindication arguments are generalized challenges for the arbitrator, not the Court.  *Rent-A-Center, W., Inc., v. Jackson*, 561 U.S. 63, 72 (2010).  Because Murphy concedes the delegation clause is valid, the Court must compel arbitration without reaching his remaining arguments.  *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023) ("to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it.").

   *c.  The Challenges to Murphy's Arbitration Agreement Are Meritless*

   Plaintiffs' other objections also fail.  First, the assertion that Murphy lacked notice or did not assent (Opp. at 16–17) is baseless.  Clickwrap agreements are "[t]he most straightforward" examples of affirmative assent and notice.  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

---

[2]  *See Gonzalez v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 98108, at *51 (S.D.N.Y. May 27, 2022) ("Courts have deemed arguments waived and have declined to address them where a party does not cite to any authority in support and does not develop its argument.").

Second, to invalidate the arbitration clause, Plaintiffs "must prove both procedural and substantive unconscionability," *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 865 (N.D. Cal. 2024), neither of which is shown here.  Murphy cites no authority for his unconscionability arguments.  The challenged provisions are routine and enforceable.  *See, e.g.*, *id*. at 869.  Under the FAA, even if this Court found any other part of the Terms unenforceable, the Terms' severability provision (Agosti, Ex. 1 at 32), requires enforcement of the remainder, including the arbitration clause.  *Davenport v. NVIDIA Corp.*, 719 F. Supp. 3d 1019, 1025 (N.D. Cal. 2024).

Third, Murphy offers no evidence that the arbitration clause was fraudulently induced. Alleged misrepresentations about Phantom's software do not invalidate the arbitration agreement, absent inducement of the specific clause.

Finally, the arbitration agreement covers "all controversies or disputes between you and Phantom," including those over enforceability.  Agosti, Ex. 1.  Murphy's claims, statutory or otherwise, arise from his use of Phantom's services.  Mot. at 10.  That Murphy "purposefully" omitted the Terms from the AC (Opp. at 35) is irrelevant; the operative facts plainly fall within the agreement's broad language.

### d.  *Arbitration Preserves Murphy's Ability To Vindicate His Rights*

The "effective-vindication" rule is a narrow "exception" that applies only when an agreement prospectively waives statutory rights, not when it sets procedures or allocates costs. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–36 (2013).

None of Murphy's objections prevent him from pursuing his federal claims or remedies. Pre-arbitration steps (Opp. at 10–11) are enforceable conditions precedent, not "trapdoors," and

Murphy cites no case suggesting otherwise.  Opp. at 11.  His speculation about fee awards is irrelevant, because the arbitrator decides a party's compliance with procedural prerequisites.

The arbitration agreement also does not waive statutory rights or remedies (itself a question for the arbitrator).  Indeed, the Terms expressly preserve such rights and remedies, providing, "[t]he arbitrator shall be authorized to award any remedies, including injunctive relief, that would be available to you hereunder in an individual lawsuit."  Agosti, Ex. 1 at 28.  There was no prospective waiver.

Further, 7 U.S.C. § 25(c) is a venue provision, not an anti-arbitration command.  CEA claims are arbitrable, as courts repeatedly hold.  *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) ("An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed."); *Kumaran v. Vision Fin. Markets, LLC*, 2022 WL 17540669, at *5 (S.D.N.Y. Dec. 6, 2022) ("other statutes containing the same language have been held to be arbitrable"); s*ee also Shearson/Am. Express v. McMahon*, 482 U.S. 220, 238 (1987); *Harter v. Iowa Grain Co.*, 220 F.3d 544, 554 (7th Cir. 2000).

Murphy's contention that Congress amended the CEA in 1992 to prohibit arbitration (Opp. 12–13) is flatly wrong.  As the CEA recites, "[n]othing in this subsection shall limit or abridge the rights of the parties to agree in advance of a dispute upon any forum for resolving claims under this section, including arbitration."  7 U.S.C. § 25(a)(2).

Finally, Murphy's complaints about the Terms' limitation on class or collective arbitration (Opp. at 12) are irrelevant because Phantom is only moving to compel arbitration against Murphy. The non-user Plaintiffs' claims will remain in this Court if Phantom's motion to dismiss is denied.

II.    <u>**The Non-Users Lack Standing**</u>

The non-user Plaintiffs, who are not alleged to have downloaded, interacted with, or relied on Phantom, lack standing.  Plaintiffs attempt to reframe their allegations as though each used Phantom (Opp. at 18), but the AC alleges that only Murphy used Phantom (AC ¶¶ 111–25).  The single generic reference that "Plaintiffs" deposited tokens in "Phantom's application" (Opp. at 18; AC ¶ 231) constitutes impermissible group pleading.  Each Plaintiff must establish Article III standing individually.  *See e.g.*, *Seife v. U.S. Dep't of Health & Hum. Servs.*, 440 F. Supp. 3d 254, 272 (S.D.N.Y. 2020).

Regardless, Plaintiffs' claimed "99% diminution in value" (Opp. at 17) is a speculative, market-wide effect allegedly caused by a third-party's crime.  Indirect, sentiment-driven market fluctuations are not "concrete and particularized" injuries for standing purposes.  *Anderson v. Tether Holdings Ltd.,* 2023 U.S. Dist. LEXIS 138242, at *5–7 (S.D.N.Y. Aug. 4, 2023); *In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 962 F. Supp. 2d 606, 622 (S.D.N.Y. 2013).  Plaintiffs' argument that they were "direct and immediate" (Opp. at 17) is conclusory and baseless.

Plaintiffs also do not dispute that no non-users purchased and subsequently sold tokens at a loss (Mot. at 11-13), leaving them with only hypothetical losses and no "injury in fact."  *See Anderson,* 2023 U.S. Dist. LEXIS 138242, at *5–7.

Finally, the alleged causal chain depends on multiple independent acts (such as liquidity pool changes and circulating supply statistics, Opp. at 17–18), making it too attenuated as a matter of law.  Phantom directed no conduct at the non-users, who have no standing to sue Phantom.  Mot. at 12–13; *Zanotti v. Invention Submission Corp.*, 2020 U.S. Dist. LEXIS 97040, at *25 (S.D.N.Y. June 2, 2020).

### III.    <u>The CEA Registration Claims Are Specious</u>

####     a.    *Swapper Allows Spot Transactions*

Plaintiffs rebrand fully-settled, crypto-to-crypto spot trades as "swaps" or "retail commodity transactions" by relying on labels, ignoring statutory elements.  Without the CEA's required leverage, deferred settlement, or executory obligations, there is no basis for Plaintiffs' CEA claims.

Plaintiffs invoke the "commonly known as" language from 7 U.S.C. § 1a(47), and assert that cosmetic nomenclature transforms these trades into swaps.  Opp. at 19–20.  That theory is wrong: the "commonly known as" clause does not expand the definition to include transactions lacking the requisite statutory features.  *See, e.g.*, CFTC, *Further Definition of "Swap"*…, August 13, 2012 (available at: https://www.federalregister.gov/d/2012-18003/p-1103) ("Conversely, if [a] … transaction is not a swap …, as those terms are defined in the CEA …, the fact that the parties refer to it, or document it, as a swap … will not subject that … transaction to regulation as a swap …").

Plaintiffs argue that Swapper transactions are not "spot trades" because "they are not cash-settled, lack a fixed execution price, do not involve bilateral ownership transfer, and reflect synthetic pricing based on a reference commodity (*e.g.*, SOL)."  Opp. at 20.  But Plaintiffs' own allegations show Swapper trades settle immediately, and end price exposure at execution, and thus are spot trades.  AC ¶¶131–32.  The fact that settlement occurs in cryptocurrency is irrelevant.  *See CFTC v. McDonnell*, 287 F. Supp. 3d 213, 227 (E.D.N.Y. 2018).  Plaintiffs' effort to distinguish *McDonnell* fails.  Indeed, *McDonnell* underscored the "CFTC does not have regulatory authority over simple quick cash or spot transactions that do not involve fraud or manipulation."  *Id*.

Regardless, Plaintiffs do not meaningfully dispute that Phantom is a non-custodial interface, and thus would not meet the definitions of a SEF or IB even if users could transact in commodity interests (which they cannot). *Compare* Mot. at 16 *with* Opp. at 19–20. Lacking support, Plaintiffs cite only inapposite CFTC enforcement actions (Opp. 24–25), which have no bearing on a non-custodial interface allowing users to engage in self-directed on-chain spot trades.

Finally, Plaintiffs' argument concerning "OKX" (Opp. at 25) is false. Plaintiffs withdrew their allegations concerning "OKX", and Phantom has no relationship with Aux Cayes Fintech Co. Ltd. ECF 18 at 7–8.

### b. *Plaintiffs' "Retail Commodity Transaction" Theory Is Deficient*

Contradicting their own "swap" theory, Plaintiffs argue the same transactions are also "retail commodity transactions" under 7 U.S.C. § 2(c)(2)(D). Opp. at 22–25. That provision applies only to spot transactions offered on a leveraged, margined, or financed basis. By invoking §2(c)(2)(D), Plaintiffs concede these are spot transactions. But without leverage, margin, or financing, there is no "retail commodity transaction" within § 2(c)(2)(D)'s scope. *United States CFTC v. Monex Credit Co*., 931 F.3d 966, 971 (9th Cir. 2019).

The AC does not plausibly allege that any tokens traded via Swapper are leveraged, or that trades occur on a leveraged basis. Plaintiffs' parroting that "layer two" tokens are "inherently leveraged" (Opp. at 22, AC ¶ 198) is conclusory and contradicted by allegations that buyers pay the full price upfront and receive immediate delivery without borrowing funds. AC ¶¶ 131–32. That is the opposite of leverage.[3]

---

[3]     Plaintiffs' statement that "Phantom is now the first 'wallet' to offer perpetual futures to be traded within its application" (Opp. at 23) is not alleged in the AC, and in any event, that feature is not available to U.S. persons, including Plaintiffs.

#### c.  *Plaintiffs Lack Standing To Sue For Registration-Based Violations*

Plaintiffs' standing argument fails for two reasons.  First, the CEA strictly limits private rights of action to specified violations.  Registration violations are not among them.  Mot. at 16–17. Plaintiffs cite no cases holding otherwise.

Plaintiffs' attempt to distinguish *Song* fails.  As in *Song*, Plaintiffs' alleged harm is not caused by any failure to register; rather, Plaintiffs' harm allegedly results from an intervening criminal act.  Plaintiffs' unadorned speculation that "had Phantom complied with SEF obligations … the unauthorized swaps would not have occurred" or the supposed existence of "but for cause" (Opp. at 22) is insufficient to confer standing and finds no support in the CEA or any cited case. *Song v. Yao Bros. Group LP*, 2013 WL 12109109, at *12 (S.D.N.Y. July 30, 2013); *In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 435 F. Supp. 3d 845, 873 (N.D. Ill. 2020), *aff'd sub nom. Barry v. Cboe Glob. Mkts., Inc.*, 42 F.4th 619 (7th Cir. 2022) ("Plaintiffs' allegations that enforcement [of CFTC rules] would have stopped manipulation are too vague and speculative to be plausible."); *S&A Farms, Inc. v. Farms.com, Inc.*, 678 F.3d 949, 953 (8th Cir. 2012).

Second, Plaintiffs' assertion that they have engaged in one of the predicate transactions enumerated in 7 U.S.C. § 25(a)(1) fails (Opp. at 20–21).  Plaintiffs neither transacted in a commodity interest (swap or otherwise) "through" Phantom; "deposited" property with Phantom in a manner contemplated by the CEA; nor tied any alleged price manipulation to any particular commodity interest transaction.  Mot. at 3, 13–16.  The CEA requires actual damages to the claimant from their own qualifying transaction.  *Berk v. Coinbase, Inc.,* 2018 U.S. Dist. LEXIS 184284, at *5 (N.D. Cal. Oct. 23, 2018).

**IV.** **The Negligence Claims Fail As A Matter Of Law**

  *a. The Economic Loss Rule Applies*

  Both negligence claims fail because Plaintiffs allege only financial losses, and concede Phantom owed them no "special relationship." Mot. at 18–19. Recasting their losses as "destruction in value" of tokens, or even emotional injuries (Opp. at 31), does not change that they are quintessentially economic injuries: depletion of price and loss of market value. *See Terpin v. AT&T Mobility LLC*, 118 F.4th 1102, 1116 (9th Cir. 2024) (losses allegedly stemming from and related to AT&T's alleged "failure to provide" security were "precisely what the economic loss rule prohibits"); Mot. at 17– 19.

  Labeling Phantom's conduct as "gross negligence" (Opp. at 32) does not salvage the claims. Even if gross negligence could escape the economic loss rule, Plaintiffs fail to plead the "extreme departure" required. *Infra* at 11. Furthermore, the rule bars tort recovery for purely financial harm whether the parties have a contract (Murphy) or no relationship at all (the other Plaintiffs). *See e.g.*, *S. California Gas Leak Cases*, 7 Cal. 5th 391, 396 (2019); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 967 (S.D. Cal. 2014); Mot. at 17–19.

  *b. Plaintiffs Fail To Plead Any Duty*

  *i. Negligence Per Se Fails*

  Plaintiffs' negligence *per se* claim rests on the assumption that Phantom is a "covered entity" under 23 NYCRR Part 500. That premise fails; Part 500 applies only to entities licensed by the New York Department of Financial Services. 23 NYCRR 500.1(e). Plaintiffs do not plausibly allege that Phantom needs or holds such license, but instead rely on speculation about money transmission licensing, contradicted by the AC and the Terms. Mot. at 22–23.

The enforcement matters cited by the Opposition (Opp. at 28–29) involve entities licensed or registered with NYDFS. Plaintiffs cite no case applying Part 500 to self-custody software, and their reliance on a DOJ press release about Samourai Wallet (Opp. at 28) is misplaced; that matter involved allegations of operating an unlicensed money transmission business, not the imposition of NYDFS Part 500 obligations on unlicensed entities.

Even if Part 500 applied, it includes no private right of action – express or implied. *See* Mot. at 23; *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 500 (S.D.N.Y. 2023) (noting that because Part 500 does not contain a private right of action, it could not support plaintiff's Section 349 claim). As a result, Part 500 cannot underpin a negligence *per se* claim, and its risk-based, discretionary standards enforceable only by DFS cannot serve as a tort predicate. Mot. at 23. The Opposition does not dispute either point.

### ii. *Plaintiffs Concede No Common Law Duty Exists*

Plaintiffs identify no common law duty owed by Phantom. Opp. at 27–32. This silence is fatal; Plaintiffs' gross negligence claim should be dismissed for this reason alone. Mot. at 19–20.

### c. *Plaintiffs Do Not Plausibly Allege Breach*

Plaintiffs' contention that Phantom "violated multiple provisions of Rule 500" (Opp. at 28) fails as a matter of law because Part 500 does not apply, create a duty, or support a private cause of action. Their alternative theory – that Phantom failed to protect self-custodied assets for which users are themselves responsible (Opp. at 29–30) – identifies no unreasonable conduct, no alternative design, no feasible step Phantom could have taken, and no link between any supposed omission and the alleged theft. Mot. at 20–21.

Worse still, the Opposition ignores that Phantom's alleged conduct – software design – is far from the "extreme conduct" gross negligence claims require. Mot. at 20–21. The design criticisms Plaintiffs offer (Opp. at 29–30) are garden variety negligence allegations, and do not

establish "want of even scant care or an extreme departure from the ordinary standard of conduct." *Rosencrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072, 1082 (2011) (cleaned up).

### d. Plaintiffs Do Not Sufficiently Allege Causation

Plaintiffs' account of their injury is that their losses stem from Ryduchowski stealing and selling Murphy's tokens.  Opp. at 31.  Plaintiffs cite no case countering Phantom's authority that such facts cannot support liability, nor do they dispute that a third-party's criminal conduct is a superseding cause, cutting off hypothetical liability.  Mot. at 22.

## V.    The Fraud-Based Claims Fail

### a. Plaintiffs Allege No Actionable Misrepresentations

Plaintiffs identify no specific false statement or material omission.  Their claims of "concealment" and "downplaying" (Opp. at 25–26) are contradicted by their own pleading that Phantom fully disclosed its self-custody design, related risks, and users' responsibility for safeguarding private keys.  AC ¶ 73–77; Mot. at 25–27.

Rule 9(b) demands particularity.  Plaintiffs cite no false statement, undisclosed fact, or supporting authority.  Plaintiffs' references to assorted, inapplicable regulatory guidance (Opp. at 26) is irrelevant because, as Plaintiffs concede, Phantom disclosed the risks of which now Plaintiffs complain; Plaintiffs do not identify a single, undisclosed security vulnerability, and ignore that access to detailed disclosures about risks make reliance unjustifiable.  Mot. at 25–26.

Finally, Plaintiffs do not meaningfully respond (Opp. at 32) to Phantom's argument that the "best-in-class security" statements Plaintiffs challenge are puffery.  As the authorities cited in the Motion explain, generalized claims of superiority or security do not constitute actionable misrepresentations absent particularized facts showing falsity.  Mot. at 25.

b. *No Commodities Fraud Claim Can Survive*

Plaintiffs identify no actual damages from their own qualifying transaction under 7 U.S.C. § 25(a) to underpin their commodities fraud claim. Mot. at 11. They again offer only conclusory labels (Opp. at 27) to recast spot trades as swaps or leveraged transactions.

Moreover, Plaintiffs improperly point to only generalized accusations – "ignoring complaints" or "profiting from engagement" – paired with post hoc inferences about scienter. Opp. at 26. Plaintiffs ignore Phantom's disclosures about their software and the authority cited by Phantom on this point. Mot. at 3–5.

Finally, Plaintiffs do not identify any specific misstatement upon which they relied, and Plaintiffs' receipt of repeated self-custody risk warnings (Mot. at 27) forecloses reliance. The non-user Plaintiffs allege no exposure to any Phantom statement at all. And the Opposition points to no allegation connecting any alleged reliance to a loss in a CEA-covered transaction. Plaintiffs do not address Phantom's arguments on reliance or causation, which are dispositive.

c. *No GBL Claim Can Survive*

Murphy ignores Phantom's arguments that its advertisements were not objectively misleading and that deception alone is not a cognizable injury. Mot. at 28–29. Again, claims of "best-in-class security" or "industry-leading" protection are puffery, and arguments that these statements created "false expectations" cannot survive. *Id.* *Toyota*, cited by Plaintiffs, involved specific representations about specific car features, not general statements. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010). And under New York law, not the Illinois precedent cited by Plaintiffs (Opp. at 32), "it is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020).

12

Additionally, the Opposition underscores that Plaintiffs impermissibly plead deception as both act and injury (Opp. at 32–33). *Pittman v. Chick-fil-A, Inc*., 2022 U.S. Dist. LEXIS 133686, at *13-14 (S.D.N.Y. July 27, 2022). Finally, Murphy's argument that he "downloaded Phantom's wallet" (Opp. at 32) and was later hacked is too attenuated to satisfy causation. Mot. at 29.

> ### d. No Lanham Act Claim Can Survive

The Opposition asserts, without citation, that the Lanham Act is a broad consumer-protection statute aimed at false advertising. Opp. at 33. To state a claim, however, a party must plead a commercial injury or competitive interest. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc*., 314 F.3d 48, 56 (2d Cir. 2002); *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 843 F.3d 48, 63 (2d Cir. 2016). Murphy does not and cannot allege a loss in any commercial capacity. Mot. at 29–30. Alleging that Phantom's statements "distort the competitive landscape" (AC ¶ 400) is insufficient. *Lexmark Int'l., Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 132 (2014).

The opposition likewise fails to cure his failure to allege actionable false advertising or causation. Mot. at 29–30.

## VI.    <u>The Aiding-And-Abetting Claim Fails</u>

Plaintiffs' argument that Phantom "had long been aware" (Opp. at 34) of software vulnerabilities does not plausibly show Phantom knew of <u>Ryduchowski's</u> specific criminal acts. Past vulnerabilities do not equal knowledge that he would steal Murphy's tokens, and Rule 9(b) forbids the speculation that Phantom "likely" (Opp. at 34) knew based on repeat offenders or prior reports. Mot. at 31.

Phantom could not have substantially assisted a crime of which it had no alleged knowledge. So Plaintiffs instead complain that Phantom did not freeze wallets, alert authorities, or produce identifying information. Opp. at 35. But the AC concedes that Phantom had no duty

13

to do so (AC ¶ 440). Inaction without a duty is not substantial assistance; providing neutral, non-custodial wallet software is not substantially assisting fraud. Mot. at 32. Regardless, the chain of events includes multiple independent actors and intervening causes, severing proximate causation. Mot. at 32.

## VII.    <u>The Terms Otherwise Bar Murphy's Claims</u>

Murphy admits he is bound by the Terms (Opp. at 17) and does not dispute that they bar his claims. Mot. at 32.

Plaintiffs appear to contest whether the Terms may be incorporated into the AC for purposes of Phantom's Rule 12(b)(6) motion. Opp. at 35. However, the AC relies heavily on Phantom's website (even displaying screenshots), which is both incorporated into the AC and integral to his claims. Mot. at 3 n.4. Alternatively, the Court can take judicial notice of these public statements. *Id.* Plaintiffs may not circumvent the existence of the Terms and Phantom's complete public statements through selective pleading, and the Court may consider these materials. *Id.; see Plains Mktg., L.P. v. Kuhn*, 2011 WL 4916687, at *3 (E.D.N.Y. Oct. 17, 2011).

**CONCLUSION**

Phantom respectfully requests that the Court compel Murphy to arbitrate his claims against

Phantom and stay this action, and otherwise dismiss the Amended Complaint with prejudice.

Dated:  New York, New York
        August 22, 2025

MORRISON COHEN LLP

By:  /s/ Jason Gottlieb
     Jason Gottlieb
     Daniel Isaacs
     Emma McGrath
     909 Third Avenue
     New York, New York 10022
     (212) 735-8600
     jgottlieb@morrisoncohen.com
     disaacs@morrisoncohen.com
     emcgrath@morrisoncohen.com

*Attorneys for Phantom Technologies, Inc.*

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to Section II.B.2 of the Court's Individual Rules & Practices, the undersigned hereby certifies that this reply memorandum of law contains 3,996 words in accordance with the Court's April 30, 2025 Order granting Phantom's request to increase the word limit for its motion to compel arbitration and to dismiss, and permitting a total word count of up to 4,000 words for its reply. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

*/s/ Jason Gottlieb*
Jason Gottlieb